May it please the court, Jason Tupman for Ira Arias. We are asking the court to reverse for a new trial on three grounds. I want to discuss the second ground raised in the brief, which really was litigated intensively through several stages of litigation and really brings to mind the defendant's suffering first from a shield and then a sword. There were two ways this came up initially through motions for requests for records. The motions were different and the records that they sought and the underlying relevance would impact the trial differently. The first set was related to post-offense diagnosis and treatment. That was denied, citing privacy interests and other concerns. The second was for pre-offense diagnosis and health conditions, most notably bipolar and depression and recent treatment prior to the offense. That was denied specifically on grounds as the government communicated the court that the victim would assert privilege. The third way this came up was, and I think this is the most illustrative that leads to the problem at trial, is through a motion in limine that the government filed in which they sought to prohibit any reference to KP, the alleged victim's mental health records, at trial. There again were two ways that this came up. There was the bipolar diagnosis, which would have occurred pre-offense. And then there was an all-encompassing, you shouldn't be allowed to do this at all. And in that motion, they accused the defense counsel of sullying the victim. And they again say that this is irrelevant and that the victim will continue to assert privilege throughout. The trial court splits the baby a little bit, says it'll allow very limited questioning on bipolar disorder. Having allowed that, the natural inference is, is that all of the other questioning is off-limits. And the government has said that we're going to then, we're going to say it's irrelevant. And if you bring this up, you're trying to sully the victim. Well, when we get to trial, we get a different story. Not only, not only do they not exercise privilege, they directly introduce evidence of this post-offense diagnosis of PTSD and anxiety. So no longer are we doing the, this evidence is irrelevant, this evidence is irrelevant. We're directly introducing it two times through direct examination, PTSD and anxiety. And that itself, I think, is, is the core error that we're asking for reversal on, is the admission of that testimony over defense counsel's objection. This was an appropriate bolstering. This is a case where there was no physical evidence. This is a case where there were no witnesses. So the conviction, the essential, what do you mean when you say inappropriate bolstering? I mean, that seems to be a different point from what you're making about how you couldn't get the records and so forth. You're saying even setting all that aside, she wasn't allowed to testify that she had PTSD and anxiety? Yes, because what that does is, and it really, it is, I mean, the record there is, is long. So it is, there's a lot of things going on. But the core of her testimony of PTSD leads to the inference that a doctor saw her, diagnosed her with that, witnessed symptoms consistent with that. So when she says, I've been treated for PTSD, that's not just, I think I have it. There is a licensed professional out there who not only saw me, witnessed. Was this a hearsay objection then? Well, there was not a hearsay objection. There was a, there was an objection, inappropriate bolstering, and a lot of, there was a lot of objections made. There was not a hearsay objection made there. It was just a bolstering and, and, and then getting into the litigation. The thing about the doctor sounds like you're worried about hearsay. Maybe I'm misunderstanding. I'm sorry, I didn't hear your question. Go ahead. It seems to me that you object. It comes in. Now you can't, I mean, what do you do with cross-examination? I mean, it seems to me like ordinarily when PTSD is laid out on the table, you always have the right to say, okay, PTSD and anxiety. Did it pre-exist? If it did pre-exist, were there incidents that might explain flashback, transference, disassociative states, all sorts of things that go on psychologically. And we don't even know what's even humanly possible here, because as I look at it, no one's ever seen the records. The records were never produced to the court. I never saw the records. We don't know what's in there. And, you know, because just think about all the cases that have been tried in all the land where there's been little girl was raped at five, raped again by some other relative at 11, and, you know, at 14, and you've got this medical history. And if that's out there, people routinely present that in rape cases as saying, you know, how can we be sure that she's reliable as a witness, right? That comes in, right? I mean, generally, yes. In this case, we don't know if any of that exists. But you don't know if any of it exists. And you can't possibly know it exists, because the only people who have seen the records have refused to produce them. Now, we don't have no evidence that the prosecution has the records. We have no evidence that the court saw the records. We know you didn't see the records. And so we're being asked now to make some kind of a decision based on a complete big box that's filled with something, and no one knows what's in it. Right. And to further illustrate that problem, as soon as this happens, defense counsel immediately moves for a reproduction of the records. The records had previously been denied because it was speculative, a phishing expedition. But now we've reached a point where we have testimony that's been admitted that's been deemed relevant. Where does he do that? What page of the record? I remember it moving for a mistrial, but he's already asked for the records. Sure. So there is the initial motion for a mistrial. That is handled. And then the witness finished testifies. They break for the day. And then on the very next day, in the front of transcript two, and I have it. What's the citation? In the trial transcript between pages 106 to 110. Okay. He renews his motion for a mistrial. He renews his motion for the records. And then the ruling on the records, I think, really gets it where you can affirmatively state the trial court abused its discretion. Because it does two things. It says, well, first, she didn't waive privilege, and that was the previous ground for denying a motion for mistrial. Well, they put into the record and made her PTSD an issue at this trial. That is a clear waiver of privilege. The second is that this is no longer a fishing expedition. These are records that would be call into question, direct testimony. And in doing so, the court also confuses the issues of the victim's mental health in this trial. Because it says, well, I'm allowing you to examine about bipolar disorder. But bipolar disorder was a pre-offense condition. This is a post-offense condition. And a diagnosis of PTSD says it has a stamp on it that says there was a trauma. And that's specifically tied post-offense. Now, Judge, the district court here says the court concludes that a witness answering a question posed to her during trial while under oath about mental health after the incident does not waive a privilege. You think that's incorrect? I do. And we've cited that in our opening brief, or excuse me, in our reply brief. And I think it's incorrect because when they put that diagnosis into evidence, that is then relevant evidence to that trial. And they've put it in issue. Who's they? The government put it in issue. Well, they don't have the privilege. Sure. Well, I mean, there are two things. When you read that question and answer. You're saying that this 17-year-old, by answering a question under oath, waived her privilege to her medical privacy? Because these issues were put in the litigation. Because this was made an issue in the litigation, yes. It would be similar to like when we have. What was she supposed to do? Say, I've refused to answer that question under oath because it would cause me to waive my privilege? She certainly could have done that. And earlier in the proceedings, the district court instructed and ordered the United States Attorney's Office to talk to her about her privilege and indicate whether she would assert or not assert. So it's not as if she had, you know, if they followed the district court's order, it's not as if this is a new issue that she might have privilege on previous conditions of her mental health because they were ordered to talk to her about it beforehand. The other issue I wanted to talk about that I think. . . Did the judge ever offer to review the records in camera? He did not. We asked for that in both of our motions and asked for it, I believe, in that renewed motion that happened orally. Look, if you don't want to give them to us, review them in camera. Never considered because he said the privilege is there and that this was all of limited relevance. And I allowed you to question about bipolar, but there's that fundamental disconnect about bipolar versus a post-defense PTSD diagnosis. Well, what would the post-defense PTSD have as relevance if it isn't about bolstering the claim? In the way that it was offered, I don't think any because the only thing that's offered is she suffered from PTSD. Yeah, it's got to flow as a natural consequence of the assault, right? It's evidence of injury. We certainly don't have. . . There's certainly no evidence that the jury gets that would give us any other inference that there was any other cause. Because otherwise, you know, people with PTSD or people who are anxious, you know, on cross-examination, you might be able to raise those as questions because then you're saying you're not reliable and we're impeaching your credibility as a witness. But when you offer the witness, what would be the relevance of offering that other than to bolster? I don't see any, and I think that's our chief complaint here is that it's offered to bolster, and it's offered to bolster after they've affirmatively said she's going to assert privilege and this is all irrelevant and you're trying to sully the victim. And, I mean, the PTSD does infer that there was trauma. It's tied in the questioning, particularly and specifically post-defense. There are no other things. And defense counsel. . . What about the fact that the judge right after the answer says, the court will instruct you, the jury, that psychological symptoms diagnosed post-incident, post-May of 2015, are extremely limited relevance to you all, if any? What the court was expecting is something that had been diagnosed prior to May of 2015 as the answer. So he's told the jury, this is of extremely limited relevance to you all, if any. I think, as to the court's expectation, he didn't listen to the question because the question's tagged post-offense. Well, I'm more interested in what he told the jury because isn't that relevant to whether this is reversible error? It is, and absolutely. And it's not a limiting instruction in the traditional way we think of a limiting instruction. When we think of 404B evidence coming in, a limiting instruction, the court is affirmatively saying, you can consider this evidence for some things and you cannot consider it for other things. And it naturally limits the jury's consideration for certain items of trial. When we think of a curative instruction, a judge is telling the court, or the jury, you cannot consider that. So there's unclear, or there's very clear direction. Here the judge says it's of limited relevance. Well, limited to what? No, he doesn't say that. He says it's extremely limited relevance to you all, if any. But isn't the problem with that? I mean, if you say extremely limited relevance, don't you have to say what we're cabining it to? I mean, as a trial judge, my theory always was it comes in and if it shouldn't have been there, you strike it and you tell them to disregard it. If it has relevance, you say it's relevant to this issue, this issue only. I have never in my life seen a judge who says it has extremely limited relevance, if any, particularly in light of the fact that we say that they are ultimately the arbiters of all credibility and the weight and credibility to give to the evidence, right? Because we haven't told them what they're supposed to consider it for, why they should consider it. I mean, what's with that? Exactly. It doesn't cabinet. It invades the province of the jury. It would arguably be contrary to other instructions that you should ignore our rulings or our statements as lawyers and judges, and it doesn't cabinet to anything, so there's nothing to stop a juror from saying, well, yeah, it's extremely limited. It's limited to the extent that I can consider it as bolstering for the victim. There's nothing that that instruction does to stop that problem, and I'll reserve the rest of my time for rebuttal. Thank you. Mr. Jane Geary, we'll hear from you. Good morning. Jeremy Jane Geary on behalf of the United States. First and foremost, as to the second issue, the victim did not waive her privilege regarding her communications to her therapist about any sort of diagnosis. She answered a question, a line of questioning that was deemed to exist because of the litigation in this case, and the district court allowed questioning of certain matters, and those matters included cross-examination or examination of her mental health, her diagnoses, if any, leading up to or after the assault, and they were allowed to provide expert testimony about bipolar disorder generally, among other things. What was the relevance of the PTSD? So the relevance was her troubles at home. There wasn't even a note on the medical record that was post-dated, the medical exam that took place at the Sanford Clinic in Fargo. The only reference about diagnoses at that point was, quote-unquote, bipolar and eczema. Okay, so even at that point, there was no mention of PTSD, but all of the medications, I guess, were cross-examined, the victim was cross-examined about, and how they had an effect on her ability to perceive the events, to recall these events, and that's what really this is about. No, no, the question was, you asked, since the assault, have you since been diagnosed with something else? Right, that was our touchstone, was this marker of the assault in May 2015. But there was testimony by her mother and, leading up to that question, by the victim of troubles at home. And so what's the relevance to that? What element of the crime does that go to? How does it make the crime more likely to have been committed than not committed, other than merely bolstering? Well, it was not about bolstering. It was about to explain her effect and her demeanor at the jury trial. The jury was there to weigh her credibility, to weigh the testimony that she was providing as the victim. And she, it's hard to read on a cold record, but she was very traumatized even at the jury trial. So the limited purpose was to explain her affect and her testimony? Absolutely. And why wasn't that given as a limiting instruction? I think it was, well, I don't know. Did they ask for that limiting instruction? There was no question about a limiting instruction with regard to that, but it was obvious from the stand about how her mental health, her affect, rather, was. And so when this is opened up, right, now you've got out there, my affect has been affected by what's happened to me, right? That's the only explanation, right? And the troubles and things that have been going on at home, the disconnect with the father, the father volunteering certain things to the nurse, all of these surrounding hurricane, if you will, concerning her home life, in addition to the rape. Yeah, well, why isn't at that point, why aren't the records produced for in-camera inspection? I mean, it just strikes me that once you've put this mental health issue firmly in front of the jury, there's a right to cross-examination, right? You have the right to cross-examine the witness. And this privilege, you know, if this was an adult, I think it would be an easy question to say, you chose to answer this question, you've waived whatever privilege you have in your medical records. You say that I've been diagnosed after an incident of some disorder, you've waived it at least as to that disorder. Now, I get that whether it gets to the jury or not, it at least gets to the judge so someone can look at it. Now, mine might be different, but I'm having a hard time here because, and even after it became an issue, nobody's ever bothered to produce it so anyone even knows what's in those records. I mean, have you ever seen them? No. Yeah. So it fails on several grounds, the request for these records. One, it failed at the outset with the first district judge who had this case. Now, you need to focus on after the question was asked and answered in the trial, not the original fishing expedition argument. You need to focus on why it wasn't proper to order the records after you asked, have you been diagnosed with something after the incident? You brought it up. Sure. Well, I think it was going to be brought up no matter what. That was in the district court judge's order at docket 170. The judge was going to allow all this questioning, the district court. All of what questioning? The questioning about mental health. But if the cross, if it shows up on cross, no problem. I mean, if you raise it, somebody has a post-existing condition, you've waived any harm at that point. It's different when the government offers it and the defendant has no right to effectively cross-examine it, isn't it? Well, I think they had ample time and opportunity. How do we know that? We don't even know what the records show. They crossed her extensively about her medications and those things that affected her mental health that may have an opportunity to affect her perception, whether to recall those sorts of things. All of that was laid out, including her demeanor, in front of the jury. His opportunity was ample. How do we know when we don't know what was in the box? I mean, you could go back. In those records, there may be reports of prior sexual assaults. There may be reports of prior suicide attempts. There may be reports of prior hallucinations. There may be prior mental health hospitalizations. I mean, we don't have any idea what's in there, right? And how can we honestly say that there's no harm in this and he had ample opportunity to cross-examine when we have no idea what we're talking about? Well, he offered expert testimony on these matters to rebut and to remind. But a human being's life, their psychological health, is put together by a whole series of events that occurred to them, right? And you just pull out this diagnosis and you throw it on the table. Don't you see that there might be some question about there may be some other basis for that diagnosis, that somebody else's prior, that the witness's prior life may somehow impact? Because we don't get to cabin like all of my problems are the result of either I have a bad relationship at home that's kind of strained with my parents or the assault. I mean, they don't live in a vacuum. There's a whole. People are bullied. People are assaulted. And people who are victimized, unfortunately, are often preyed upon by multiple people because of just their personalities. I mean, right? I mean, you've seen these cases because you've prosecuted them where some poor little girl has been assaulted over a period of many years by different people because they're just victims, right? I mean, they're easily preyed upon, right? Agreed. And how do we know that this couldn't be one of those cases and it might not matter? Well, the opportunity under Ritchie was to cross-examine, and the records were on cross-exam was not effective in whatever way and whatever method. He was allowed to cross-examine her, impeach her, which he did, on the matters that were subject to impeachment, which were perception, things of recall. She also was cross-examined on the medications that she took, all of those medications related to anxiety. Those predated the sexual assault and post-dated. Any mention of the PTSD post-dated, admittedly, the assault, but he also post-dated or there was no mention of it even after at the post-exam, the exam that was conducted in Fargo on June 10th of 2015. I also do not believe that the privilege was waived. The argument in the brief is about implicit waiver. Implicit waiver relates to the cases such as Rodriguez, and implicit waiver was the mental health was actually the topic, the issue of those sorts. But even not waived, deprived of the opportunity to meaningfully cross-examine, isn't the answer is strike the evidence, instruct the jury to disregard it, or if it's prejudicial and not harmless to say, new trial, try again. Well, I don't think an error occurred. I think that the judge instructed appropriately. Well, what kind of an instruction was it? What did it exactly tell the jury to do? That there was marginal, extremely limited relevance. And is that the judge's call to make under the law? It is. Because isn't the judge decide, is it relevant or not relevant? That's what we're called to do. And once it's in, we don't get to tell people, please give this evidence just a little bit of weight and give that evidence a whole lot of weight. We don't get to do that as trial judges. Well, the defense strategy at trial was to, one, impeach the victim, and then that it didn't happen, or, on the other hand, that she consented in some way. He was playing both cards. So then you have this quasi-relevant or not relevant sort of defense posture. They offer an expert that has really no bearing on this victim, on this actual victim, with regard to depression. His testimony then varies from the motion hearing, their offer of proof from depression, to then shoehorn in that depression may cause, in extreme senses, some sort of hallucinations. There was no evidence whatsoever about any of that sort of mental incapacity. Lastly, there are no experts. Well, maybe there was no good faith basis because they didn't know what the record would show. Okay. On page 401 and 402 of the trial transcript, the expert even admits on his own that those diagnoses have no basis or foundation to impeach or cause, to make up or to misconceive allegations of assault, sexual assault or physical assault, bipolar, depression, whatever. Their own experts. But was he asked about PTSD? Because, I mean, I've sat in a lot of trials where people have claimed that PTSD can give rise to disassociative states and lack of perception and transference of identity. Sure. Okay. Well, that goes then to the timing of the diagnosis, which in my estimation under this record was after June of 2015. So we were talking about her perception and her ability to recall and perceive in early May of 2015. Their own expert said that depression and bipolar disorder will not impact or a victim cannot make up allegations of assault or rape. Their own expert. Even though the court, to your question, questioned the relevance of their offered proffered expert at the first instance and allowed the defendant to present this testimony, I think in just good measure to give him some sort of semblance, splitting the baby, if you will. I think that term was used. I don't remember which of you said it. I also think that the victim's perception was available for the jury to assess, whether that goes to the flat affect, but also her ability to perceive and recall the specifics of the sexual assault. In the jury trial transcript at 38 through 46, you will read her ability to recount in great detail, which, as an aside, goes to harmless error if the court gets there. I urge you that it not, but there was ample evidence of the sexual assault in any event. The touching. Her breasts were grabbed. He kissed neck, hand under her underwear. She was digitally penetrated. He put his mouth, put his fingers on her genitalia. He she smelled beer. She perceived the window being open. That window was open. She could tell that the sun was coming up and that was an early morning hour of the sexual assault. The sun was rising. She knew that the time of day was was going from dark to light. She was hearing him breathe. She was hearing the squeak of the bed. She articulated that she felt pain during the assault. Her arm was stuck and that then that her arm was scarred because of the defendant's actions. Now, that all goes to perception and ability to perceive and recall the events at issue. And I think those also go into, Judge Erickson, what you're suggesting. Let's say, for argument's sake, that the district court should have said something a little bit more while this trial was going. It's harmless. It goes to the harmless error analysis and that there was ample evidence, in addition to the victim's testimony, others who perceived her, others who corroborated the testimony and the facts giving rise to the three allegations in the indictment. I do have one question about one of the other issues that I just wanted to ask. Before we go to that, can I just ask, what do you mean when you say there was evidence other than her testimony? Well, certain facts were corroborated by others. The opportunity, the access, the scar on her arm, things of that nature. But that goes to her ability to perceive. So I'm trying to shoehorn as quickly as possible the facts that support her testimony, but also that were subject to cross-examination and an opportunity to cross-examine in accordance with Ritchie. I'm sorry, Judge. Yeah. My question really was about the other prior sexual act evidence that came in. It looks to me like the trial judge, Judge Lang, said that the two reasons that he allowed the two witnesses to testify and excluded the other was because of the similarities, which he described as trying to get somebody into a private place and he'd been drinking, right, trying to get them alone someplace where there's no one else around and that they were drinking. And it seemed to me that that sounds like a description of basically every sexual assault that I've ever seen in my years as a lawyer or a judge. And so was there anything more than that? Because, you know, as I look at the victims, they don't seem to be similar age. They're, you know, no modest apparante kind of things that tie them together. So I'm just wondering, was there more there or is that it? There was a lot more there. Okay. The similarities in their testimony, you'll find the jury transcript at 210. Well, first of all, they provided a limited instruction, but to your question, I list not in the jury transcript, Judge, I apologize. In my briefing there on pages 13 and 14, there are all of the similarities regarding the 413 witnesses and their jury trial transcripts of all three witnesses. And there is ample overlap between all of them. Alcohol was involved, the access and opportunity that you discussed, the time of night, all involved force of varying degrees. In the defendant's brief, it makes light of that the victim didn't resist enough. And that I find that factually offensive and also legally inaccurate under the case law of this circuit. They're isolated. They knew the defendant. In all three instances, he groped their breasts, caused pain, whether it was vaginal penetration with fingers, a penis, and marked, left marks on at least two of the victims. The victim of this case, KP, but also D.L., she talked about the marking on her breast. You also have the reasons set forth in my notice. I think under 413, all of his other sexual assaults satisfied, all 413D, A through D, are satisfied in all of those sexual assaults that were admitted. And while I'm here and I'm talking about it, I'll say that the district court balanced, did the balancing test under 403 appropriately. The district court struck three of the five noticed witnesses. Two were allowed to testify because of their sufficiently similar conduct. And I am definitely out of time. And so I will sit down unless there are any other questions. And I thank the court for its questions. Thank you, Judge. Thank you for your argument. Mr. Tupman, we'll hear from you in rebuttal. Very briefly. Addressing harmless air, the only evidence of the assault is the testimony of the victim. There was a lot of discussion and there has been a lot of discussion about the expert testimony and the bipolar diagnosis. That's conflating the issue with PTSD. Bipolar occurred before. PTSD occurred later. The PTSD diagnosis necessarily implies that there was a traumatic event. Please turn on the clock. Go ahead. Sure. Thanks for the bonus time. The PTSD necessarily implies there was a traumatic event. What about the argument that the timing is such that the PTSD arrives in May, the reports were all made in May, the PTSD diagnosis is never made until June, and that it really doesn't do anything to undermine the reliability of the original statements? The PTSD diagnosis absolutely does not undermine the reliability of the statements. PTSD bolsters the statements. That's our problem. Right. You know what I mean? I didn't mean undermine. I meant affect, impact. Yeah. It necessarily bolsters it by giving it the professional stamp of a diagnosis. Thank you. Unless there's further questions, I'll be done. Okay. Thank you. The case is submitted and the court will file an opinion in due course. That concludes the argument calendar for the day. The court will be in recess until further call of the docket. Go ahead.